## CHARTER OAK LENDING GROUP, LLC *v.* JANET AUGUST ET AL.
### (AC 31303)

Beach, Alvord and Pellegrino, Js.

Argued November 18, 2010—officially released March 22, 2011

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellant (plaintiff).

*Jill Hartley*, with whom was *Stephen C. Schoettmer*, for the appellees (named defendant et al.).

*Opinion*

ALVORD, J. The plaintiff, Charter Oak Lending Group, LLC, appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the defendants Janet August, Lia Stites, Barbara Coles, James McKenna, Patricia Holland, Patricia Kay and John Migliaro,[1] its former employees, and their new employer, the defendant CTX Mortgage Company, LLC (CTX). The plaintiff filed a multicount complaint against the defendants claiming that they had conspired to misappropriate the plaintiff's proprietary and confidential information. At the conclusion of the plaintiff's case-in-chief, the defendants moved to dismiss the action pursuant to Practice Book § 15-8 for failure to make out a prima facie case. The court deferred its ruling on those motions, and the defendants presented their evidence. After the trial had concluded, the court ruled on those motions, dismissing several counts of the plaintiff's complaint pursuant to Practice Book § 15-8 and subsequently issued a memorandum of decision finding in favor of the defendants with respect to the remaining counts.

On appeal, the plaintiff claims that the court improperly (1) dismissed the counts of its complaint that alleged misappropriation of its trade secrets in violation of the Connecticut Uniform Trade Secrets Act (CUTSA), General Statutes § 35-50 et seq., (2) dismissed the counts of its complaint against the individual defendants that alleged breach of their fiduciary duty to refrain from disclosing the plaintiff's confidential information and trade secrets, (3) concluded that its claim

---

[1] Deborah Bourgeois, Catharine Leo and Sherry Sawyer also were named as defendants in this action. The plaintiff withdrew the complaint as to those defendants after the trial had commenced. Hereafter, we refer to the individual defendants by name where appropriate, and collectively as the individual defendants.

that the defendants violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., was without any legal basis or factual foundation, (4) concluded that it failed to prove the elements of a civil action for conspiracy against the defendants and (5) concluded that the report of the plaintiff's expert on damages failed to establish a causal link between the defendants' actions and the plaintiff's decline in value. We reverse in part the judgment of the trial court.

By way of background, the plaintiff, a mortgage broker and lender, was formed in 1999 with its principal place of business in Fairfield County. The business, owned by Donald DeRespinis and his wife, Debra Killian, had contractual arrangements with lenders to provide those lenders with customers seeking loans. The individual defendants were mortgage specialists or loan originators,[2] who had been hired and trained by the plaintiff. They were responsible for obtaining customers and their relevant contact information for the business. Each mortgage specialist was paid a commission based on the fee earned by the plaintiff on the loan closing. The individual defendants had no written contracts of employment and were not asked to sign confidentiality or noncompetition agreements.

DeRespinis had developed a customized computer program called Loan Manager (program) for the business. The plaintiff's mortgage specialists were expected to input their customers' contact information, including the names of the people who referred the customers to them, into the program. DeRespinis periodically upgraded the program, which tracked the communications between the mortgage specialists and their customers and the progress of the loan transactions. A

---

[2] The plaintiff consistently refers to the individual defendants as mortgage specialists. Such positions are described as loan officers or loan originators by other lending institutions and mortgage companies.

mortgage specialist could access only that information in the program that related to his or her own customer.

In November, 2004, two of the individual defendants attended a seminar called "Passion for Production." Upon arrival, they realized that the actual purpose of the event was to recruit loan originators for CTX. At the event, CTX demonstrated the use of its media center program, which facilitated continuous contact between loan originators and their customers. On November 12, 2004, which was close in time to the CTX event, the plaintiff held a meeting for its mortgage specialists. Partially in anticipation of a downturn in the real estate market, the plaintiff had decided to implement a new plan that affected the compensation of the mortgage specialists. They were told that their commissions were to be reduced and that certain other benefits were being eliminated. Some of the mortgage specialists expressed their dissatisfaction with the new plan to Killian.

On December 1, 2004, four of the individual defendants tendered resignation letters that indicated they were terminating their employment with the plaintiff effective immediately. The remaining individual defendants left on or before January 7, 2005. Within that five week period, ten of the plaintiff's employees, including the seven individual defendants, resigned and accepted employment with CTX, the plaintiff's competitor. The plaintiff, claiming that its confidential information and loans had been diverted to CTX, filed the present action. In its operative complaint filed October 19, 2005, the plaintiff alleged civil conspiracy, breach of fiduciary duty, violation of CUTSA, violation of CUTPA, conversion, statutory theft and computer related offenses in violation of General Statutes § 53a-251.

The plaintiff concluded its case-in-chief after ten days of trial and rested. At that point, the defendants orally moved to dismiss the action pursuant to Practice Book

§ 15-8,[3] claiming that the plaintiff failed to make out a prima facie case as to all counts of the complaint. The court indicated that it was reserving its decision until the completion of the trial. Counsel for the defendants stated they would file written motions and accompanying memoranda of law, and counsel for the plaintiff indicated that he would file responses to those motions. The defendants then proceeded to present their evidence, and the trial concluded that same day.

By memorandum of decision issued August 27, 2008, the court dismissed the counts of the plaintiff's complaint that alleged violation of CUTSA, breach of fiduciary duty, conversion and statutory theft.[4] The court denied the defendants' motions to dismiss with respect to the counts that alleged violation of CUTPA, unauthorized computer access and civil conspiracy. The parties filed subsequent briefs addressed to the surviving counts of the complaint, and the court heard argument on April 30, 2009. On July 8, 2009, the court issued its memorandum of decision, rendering judgment in favor of the defendants as to all of the remaining counts.[5] This appeal followed.

I

DISMISSAL PURSUANT TO PRACTICE BOOK § 15-8

The plaintiff's first claim on appeal is that the court improperly dismissed the counts of its complaint that

[3] Practice Book § 15-8 provides: "If, on the trial of any issue of fact in a civil matter tried to the court, the plaintiff has produced evidence and rested, a defendant may move for judgment of dismissal, and the judicial authority may grant such motion if the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made."

[4] The plaintiff does not challenge the court's dismissal of its counts alleging conversion and statutory theft in this appeal.

[5] The plaintiff has not appealed from the judgment rendered in favor of the individual defendants with respect to the count against them alleging computer related offenses in violation of § 53a-251.

alleged violation of CUTSA and breach of fiduciary duty. Specifically, the plaintiff claims that the court applied an incorrect legal standard in granting the defendants' motions to dismiss under Practice Book § 15-8 and that it had provided sufficient evidence to establish a prima facie case. We agree.

"The standard for determining whether the plaintiff has made out a prima facie case, under Practice Book § 15-8, is whether the plaintiff put forth sufficient evidence that, *if believed*, would establish a prima facie case, not whether the trier of fact believes it. . . . For the court to grant the motion [for judgment of dismissal pursuant to Practice Book § 15-8], it must be of the opinion that the plaintiff has failed to make out a prima facie case. In testing the sufficiency of the evidence, the court compares the evidence with the allegations of the complaint. . . . In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . [T]he evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiff's] favor." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Gambardella* v. *Apple Health Care, Inc.*, 86 Conn. App. 842, 846, 863 A.2d 735 (2005).[6] Whether the plaintiff has established

_____

[6] "A motion for judgment of dismissal has replaced the former motion for nonsuit for failure to make out a prima facie case. . . . When such a motion has been granted, the question is whether sufficient facts were proved to make out a prima facie case. . . . The right of the court to grant such a motion is to be sparingly exercised . . . where the granting of a nonsuit must depend in any appreciable degree upon the court's passing upon the credibility of witnesses, the nonsuit should not be granted . . . where a case is close, the preferable course is to deny a motion for a nonsuit . . . ." (Citations omitted; internal quotation marks omitted.) *Thomas* v. *West Haven*, 249 Conn. 385, 391, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000). "A party has the same right to submit a weak case as he has to submit a strong one." (Internal quotation marks omitted.) Id., 392.

a prima facie case is a question of law, over which our review is plenary. *In re Devon W.*, 124 Conn. App. 631, 640, 6 A.3d 100 (2010).

## A

### CUTSA Claims

The plaintiff claims that the court ignored conflicting evidence and decided questions of fact when it dismissed the counts of its complaint alleging violation of CUTSA. We conclude that the court applied an incorrect legal standard for a motion for a judgment of dismissal pursuant to Practice Book § 15-8.

In its August 27, 2008 memorandum of decision, the court initially stated the proper standard to be used in determining whether such a motion should be granted. Shortly thereafter, however, the court indicated that the individual defendants were "independent contractors"[7] and made certain findings that led to its dismissal of the CUTSA counts. The court stated: "The court further finds *based on the more credible evidence* that there does not exist any written agreements or verbal understandings concerning confidentiality or secrecy between the named defendants and the plaintiff involving any particular aspect of [the plaintiff's] operations, data resources systems, programs, training or financial matters." (Emphasis added.) Further, in discussing proprietary interests in customer and referral lists, the court stated: "Although [the plaintiff] supplies support and a particular program to develop and process loan applications through the agent/broker, the customer

---

[7] In the August 27, 2008 memorandum of decision, the court stated: "As indicated in the earlier finding of facts, each of the said 'employees' of [the plaintiff] was considered an independent contractor, for both tax and functional purposes." The individual defendants never claimed that they were independent contractors, nor did they ever dispute the plaintiff's claim that they were former employees of the business. The testimony at trial was that the plaintiff withheld taxes from their paychecks, issued W-2 forms and provided certain benefits pursuant to a 401 (k) matching plan.

itself, *based on the more credible evidence,* appears to have a sustaining allegiance to the agent-broker-originator, not to the plaintiff support company." (Emphasis added.) Finally, referring to testimony concerning the lack of efforts by the plaintiff to treat the customer information as confidential, the court stated that "[t]he fact that customer surveys were a matter of public display . . . would militate, along with other evidence adduced at trial, against a finding that the so-called contact-customer lists were 'trade secrets' . . . ."

The language in the memorandum of decision indicates that the court impermissibly made findings as to disputed facts, weighed the credibility of the witnesses and drew inferences against the plaintiff. "[A]lthough the trial court in its memorandum of decision at times framed its determination in terms of *its findings,* that is not the proper inquiry in ruling on a motion to dismiss under Practice Book § 15-8. On such a motion, the court is confined to determining whether the plaintiff's evidence, *if believed and if given the benefit of all favorable inferences,* makes out a prima facie case. . . . The court, on such a motion, may not make findings of fact, either favorable or unfavorable to the plaintiff." (Citation omitted; emphasis in original.) *Thomas* v. *West Haven,* 249 Conn. 385, 399, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000). Accordingly, we agree with the plaintiff that the court applied an incorrect legal standard in granting the defendants' motions to dismiss under Practice Book § 15-8.

The defendants claim that, despite the above quoted statements of the court, the record nevertheless reflects that the plaintiff failed to present sufficient evidence to establish a prima facie case under CUTSA. They argue that the scant evidence presented by the plaintiff, even taken in a light most favorable to the plaintiff, could not satisfy the elements for a CUTSA claim

because the information at issue was not a trade secret. We disagree.

General Statutes § 35-51 (d) defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." In its complaint, the plaintiff alleged that its customer list was a trade secret as defined in CUTSA, that the information in that list was intended to be utilized exclusively for the plaintiff's benefit and that the defendants misappropriated such information. Accordingly, to make out a prima facie case for a violation of CUTSA, the plaintiff was required to present sufficient evidence that, if believed, would prove that the information in its customer list had independent economic value and that the plaintiff made reasonable efforts to maintain its secrecy. See *Elm City Cheese Co.* v. *Federico*, 251 Conn. 59, 78, 752 A.2d 1037 (1999).[8]

A careful review of the record reveals that the plaintiff's evidence met the relatively low standard necessary to withstand the defendants' Practice Book § 15-8 motion. See *Falker* v. *Samperi*, 190 Conn. 412, 420, 461 A.2d 681 (1983). DeRespinis testified that (1) customer information is inputted into Loan Manager, the computer program he created that is used to develop contacts and customer lists and to generate business from

---

[8] The question of whether information sought to be protected by CUTSA rises to the level of a trade secret is a question of fact. *Elm City Cheese Co.* v. *Federico*, supra, 251 Conn. 68. The question of whether a party has made reasonable efforts to maintain the secrecy of a purported trade secret is a "highly fact-specific inquiry." Id., 80.

those lists, (2) the individual defendants had computer access only to the information pertaining to their own customers, (3) the program tracked business, including loans in progress and loans that already had closed, (4) the plaintiff maintained computer security in that the information was encrypted, the servers were secured in a locked room and access was obtained through the use of passwords, (5) for the individual defendants to work from home, the plaintiff had to assist them in setting up their home computers to allow remote access, (6) either he or his assistant periodically would track remote access to the program by reviewing the logs to determine what type of access had been granted, (7) the plaintiff additionally maintained physical security of its building by way of an alarm system, (8) each authorized individual was provided with his or her user identification and password for the program and a password for access to the plaintiff's building, (9) the plaintiff's employees were not authorized to share their user identifications or passwords with other employees, (10) except for obtaining credit reports and appraisals and processing documents necessary for obtaining loans, the plaintiff's employees were not permitted to share customer information with third parties, (11) the plaintiff's employee handbook, which contained a section on confidentiality, was reviewed with all employees at the time of their initial employment and annually thereafter with respect to any changes in the policy, (12) the plaintiff never sold its customer lists, (13) the plaintiff did not advertise and obtained its business solely through the use of the confidential information it had developed and (14) the plaintiff permitted customer information to be stored only in the program.

Killian testified that (1) other than the program, information as to the identity of customers who closed loans with the plaintiff could not be obtained from any single source, (2) having the customers' information in the

program, such as dates concerning the change in interest rates or the expiration dates of prepayment penalties, gave the plaintiff a competitive advantage because it could identify refinance opportunities for continued service to those customers, (3) none of the individual defendants was given permission to take customer information with them when they left the plaintiff's employment, (4) the plaintiff's employees were told that any information collected in connection with a loan transaction was not to be disclosed to third parties other than the necessary contacts for obtaining the financing, (5) provisions in the employee handbook addressing issues of confidentiality, proprietary data and conflicts of interest were discussed with the individual defendants, (6) newly hired employees were given a copy of the employee handbook and instructed to review it and (7) the information in the program was critical because it gave the plaintiff the opportunity to build a future revenue stream from repeat customers.

We conclude that the foregoing testimony, if believed and if given the benefit of all favorable inferences, makes out a prima facie case for a violation of CUTSA. Accordingly, the court improperly dismissed those counts of the plaintiff's complaint pursuant to Practice Book § 15-8.

## B

### Breach of Fiduciary Duty Claims

The plaintiff next claims that the court improperly dismissed the counts of its complaint that alleged that the individual defendants breached their duty of loyalty to refrain from disclosing the plaintiff's confidential information and trade secrets. It argues that the court improperly determined that the information in its customer list was not confidential, that the defendants owed no fiduciary duty to the plaintiff and that there was no evidence of self-dealing.

In the section of its August 27, 2008 memorandum of decision that discussed the plaintiff's breach of fiduciary duty claims against the individual defendants, the court first noted that "[s]uch a breach relates back to the trade secret claim which has been dismissed." Next, after quoting from Connecticut case law that addressed fiduciary relationships, the court stated: "The court finds that the relationship between the plaintiff and the individual defendants was a principal-agent relationship and not fiduciary in nature. Further, the court finds that the plaintiff has failed to introduce sufficient evidence to support its claim of fiduciary breach through self-dealing, and therefore those [c]ounts . . . relating to the claim of breach of fiduciary duty as to the individual defendants are hereby dismissed pursuant to Practice Book § 15-8."

As discussed in part I A of this opinion, the court improperly dismissed the counts in the plaintiff's complaint alleging that the defendants' violated CUTSA. The court applied an incorrect legal standard when it determined that "*based on the more credible evidence . . .* there does not exist any written agreements or verbal understandings concerning confidentiality or secrecy between the named defendants and the plaintiff involving any particular aspect of [the plaintiff's] operations, data resources systems, programs, training or financial matters." (Emphasis added.) In dismissing the counts addressed to breach of fiduciary duty, the court relied in part on its previous determination that there was no violation of CUTSA. Because that determination was improper, it cannot be the basis for the dismissal of the breach of fiduciary duty claims.

Further, the court found that the relationship between the parties was a principal-agent relationship and not fiduciary in nature. As previously noted, the court "may not make findings of fact, either favorable or unfavorable to the plaintiff" in ruling on a motion

to dismiss under Practice Book § 15-8. *Thomas* v. *West Haven*, supra, 249 Conn. 399. Nevertheless, the court's determination that the relationship was one of principal and agent is inconsistent with its subsequent determination that the relationship was not fiduciary in nature. "An agent is a fiduciary with respect to matters within the scope of his agency." *Taylor* v. *Hamden Hall School, Inc.*, 149 Conn. 545, 552, 182 A.2d 615 (1962). "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." (Internal quotation marks omitted.) *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 639 n.12, 804 A.2d 180 (2002). "The relationship of principal and agent implies trust or confidence by the principal in the agent, and the agent is obligated to exercise the utmost good faith, loyalty and honesty toward his principal or employer. . . . The general duty of loyalty includes . . . the duty not to compete . . . and the duty not to disclose confidential information." (Citation omitted; internal quotation marks omitted.) *News America Marketing In-Store, Inc.* v. *Marquis*, 86 Conn. App. 527, 535, 862 A.2d 837 (2004), aff'd, 276 Conn. 310, 885 A.2d 758 (2005). Accordingly, the court improperly dismissed the breach of fiduciary duty claims on that stated ground.

With respect to the court's finding that the plaintiff failed to present sufficient evidence to support its claim that the individual defendants breached their fiduciary duty by engaging in self-dealing, we reiterate the standard that "the court is confined to determining whether the plaintiff's evidence, *if believed and if given the benefit of all favorable inferences*, makes out a prima facie case." (Emphasis in original.) *Thomas* v. *West Haven*, supra, 249 Conn. 399. In its complaint, the plaintiff alleged, inter alia, that the individual defendants were employees and agents of the plaintiff, that they

were fiduciaries with respect to matters within the scope of their agency, that they were subject to a duty not to compete with the plaintiff with respect to matters within the scope of their agency and that they breached their fiduciary duty by engaging in self-dealing in order to gain an unfair competitive advantage while employed by the plaintiff. Accordingly, the plaintiff made out a prima facie case if it presented evidence that the individual defendants were agents of the plaintiff and that they engaged in self-dealing[9] before they terminated their employment and agency relationship with the plaintiff.

A careful review of the record reveals that the plaintiff's evidence met the relatively low standard necessary to withstand the defendants' Practice Book § 15-8 motion. See *Falker* v. *Samperi*, supra, 190 Conn. 420. The plaintiff clearly introduced sufficient evidence to demonstrate an agency relationship because the court made that explicit finding in its memorandum of decision. The evidence presented that would support a finding or inference of self-dealing included the following testimony and exhibits. DeRespinis testified that (1) he became aware that customers who had contacted the plaintiff for purposes of obtaining mortgage loans had been diverted to CTX by the individual defendants shortly after they had resigned from the plaintiff's employment, (2) loan transactions that were being tracked in the plaintiff's program ultimately closed at CTX, (3) the plaintiff did not authorize the transfer of those loans and received no commissions or partial commissions for them, (4) the customer information in the plaintiff's program was the same information

---

[9] Self-dealing is defined as "[p]articipation in a transaction that benefits oneself instead of another who is owed a fiduciary duty." Black's Law Dictionary (9th Ed. 2009). "Knowledge acquired by an employee during his employment cannot be used for his own advantage to the injury of the employer during employment." *Town & Country House & Homes Service, Inc.* v. *Evans*, 150 Conn. 314, 317, 189 A.2d 390 (1963).

provided by the individual defendants to CTX, (5) Killian telephoned him on December 1, 2004, the same day that four of the individual defendants left the plaintiff's employment, to alert him to unusual activity on the plaintiff's program, (6) the unusual activity consisted of program notifications that several customers were being "suspended" from the program, which was an indication that those customers no longer wanted to do business with the plaintiff and (7) a loan for a customer of Kay was scheduled to close with the plaintiff but closed at CTX less than two weeks after Kay left the plaintiff's employment.

Additional testimony included the following. William Dolbier, the branch manager for CTX, testified that he had received an e-mail from Coles prior to her resignation from the plaintiff. In that communication, Coles indicated that she had several files that needed to be placed in CTX's system and needed his help in doing so. Kay admitted, during her testimony at trial, that she had taken several "screen shots"[10] from the plaintiff's program while employed by the plaintiff and gave them to CTX. She also confirmed that one of her customers had originated a loan with the plaintiff while Kay was the plaintiff's employee but that the loan closed at CTX shortly before she began her employment at CTX. Kay confirmed that she received a commission for that closing from CTX. August also testified that she had printed screen shots from the plaintiff's program while at the plaintiff's offices.

McKenna testified that he had removed copies of documents from his filing cabinet at the plaintiff's premises prior to his resignation. He indicated that the copies filled seven boxes and that he put those files in tote bags and took them down the back stairs. McKenna

---

[10] A screen shot is a printed copy of information taken from the screen of an individual computer.

also testified that he closed a loan at CTX for a customer who initially had contacted the plaintiff's offices while McKenna was still employed by the plaintiff. The credit report for the customer was pulled by the plaintiff. On December 1, 2004, however, that customer signed a loan application with CTX. McKenna had given the customer's name to a branch manager at CTX. McKenna's first day of employment at CTX was December 2, 2004, and he received a commission from CTX for that loan closing.

Another witness, Joseph Walkovich, testified that he left a message for Coles in November, 2004, at the plaintiff's offices indicating an interest in refinancing his mortgage loan. He indicated that a meeting was scheduled for December 1, 2004, but Coles cancelled the meeting at the last minute. The meeting was rescheduled to December 9, 2004, and Walkovich met Coles at CTX. Coles confirmed Walkovich's personal information for the loan application, which led him to believe that she already had his information with her. Walkovich never had been asked if he wanted to transfer his loan application from the plaintiff to CTX. The loan closed with CTX on January 7, 2005. Walkovich further testified that Coles told him that her departure from the plaintiff's employment had been amicable, and he assumed there had been some type of arrangement allowing Coles to take his file with her.

In addition to the foregoing testimony, the plaintiff submitted several exhibits. One exhibit was a compilation from the production ledger of loans closed at CTX that consisted of the names of individuals who had been the plaintiff's customers. Another exhibit was a summary prepared by the plaintiff identifying suspicious loan transactions or suspicious documentation that had been inputted into the plaintiff's program by the individual defendants.

We conclude that the foregoing testimony, if believed, and the exhibits, if credited, and if given the benefit of all favorable inferences, made out a prima facie case for breach of the individual defendants' fiduciary duty to refrain from self-dealing. Accordingly, the court improperly dismissed those counts of the plaintiff's complaint pursuant to Practice Book § 15-8.

## II

## CUTPA CLAIMS

The plaintiff's next claim is that the court improperly concluded that the CUTPA allegations against the defendants lacked any legal basis or factual foundation. The court made that conclusion in its July 8, 2009 memorandum of decision, which was issued after it had dismissed the plaintiff's CUTSA and breach of fiduciary duty claims pursuant to Practice Book § 15-8.

In rendering judgment in favor of the defendants on the CUTPA counts, the court prefaced its discussion with the following statement: "Those counts that had been dismissed under Practice Book § 15-8 have been enumerated in the court's decision of August 27, 2008, and will be referenced as necessary in relationship to the remaining counts that will be addressed in this memorandum of decision *which relies in part on the findings made in that decision of August 27, 2008.*" (Emphasis added.) In the section of its decision that specifically addresses the CUTPA claims, the court noted: "In this case, any CUTPA violations would be derivative from the various other counts which have been addressed in the August 27 decision. The fact that many of the underlying allegations concerning trade secrets, conversion and statutory theft and breach of fiduciary duty have already been dismissed in the court's August 27 decision under Practice Book § 15-8 would suggest that the *remaining underpinnings for any kind of a CUTPA claim have been marginalized.*"

(Emphasis added.) In the last paragraph of that section, the court concluded: "The fact that certain elements of the plaintiff's complaint have already been dismissed only weakens and negates the viability of the remaining counts in the plaintiff's amended complaint and therefore leaves the CUTPA counts as enumerated without any legal basis or factual foundation."

This is a situation in which the court's conclusion as to the viability of the CUTPA counts is inextricably intertwined with its previous, and erroneous, determination that the CUTSA and breach of fiduciary duty counts should be dismissed for failure to make out a prima facie case. The court's judgment in favor of the defendants is dependent on the court's analysis in its August 27, 2008 memorandum of decision. Accordingly, the judgment as to the CUTPA counts cannot stand.

III

CIVIL CONSPIRACY CLAIMS

The plaintiff's next claim is that the court improperly concluded that it failed to prove the elements of a civil action for conspiracy against the defendants. Specifically, the plaintiff argues that the court's conclusion was based on its erroneous determination that the plaintiff's information was not confidential and on its dismissal of the CUTSA counts. We agree and reverse the court's judgment as to the civil conspiracy claims.

In its complaint, the plaintiff alleged that the defendants conspired to divert the plaintiff's customers and confidential information to CTX. In its July 8, 2009 memorandum of decision, the court properly noted that a claim of civil conspiracy is legally insufficient unless it is based on some underlying cause of action. "[T]here is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself." (Internal quotation marks omitted.) *Marshak*

v. *Marshak*, 226 Conn. 652, 669, 628 A.2d 964 (1993), overruled on other grounds by *State* v. *Vakilzaden*, 251 Conn. 656, 666, 742 A.2d 767 (1999) (en banc). Under a civil conspiracy theory, the requisite elements are: "(1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." (Internal quotation marks omitted.) Id., 665.

Accordingly, as stated by the court, the "interdependence between this civil conspiracy count and all of the other remaining CUTPA counts . . . needs to be addressed in [an] interrelated fashion . . . ." The court mentioned only the CUTPA counts because it already had dismissed the CUTSA counts. Again, the court's judgment in favor of the defendants with respect to the civil conspiracy claim is dependent on the court's analysis in its August 27, 2008 memorandum of decision. Accordingly, the judgment as to the civil conspiracy count cannot stand.

## IV

## DAMAGES

The plaintiff's final claim is that the court improperly concluded that the report of the plaintiff's expert on damages failed to establish a causal link between the defendants' actions and the plaintiff's decline in value. The plaintiff argues that the "court's findings on damages hinge upon the plaintiff's alleged failure to prove liability" and that, in this case, "[a] reversal on liability warrants a reversal on damages." We agree.

The court addressed the plaintiff's claimed monetary losses, as determined and analyzed in the report of the plaintiff's expert, in a single paragraph at the end of

its July 8, 2009 memorandum of decision. Given its dismissal of the plaintiff's CUTSA and breach of fiduciary duty claims, and its linked determinations that the plaintiff failed to prove its CUTPA and civil conspiracy claims, the court's evaluation of the plaintiff's claim for damages inevitably was colored by its previous erroneous determinations. The issues of liability are intertwined with the issue of damages, and a new trial on both is required in the interest of justice.

The judgment is reversed only as to the counts alleging violation of CUTSA, breach of fiduciary duty, violation of CUTPA and civil conspiracy, and the case is remanded for a new trial on those counts. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.