******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX
HAYES FAMILY LIMITED PARTNERSHIP ET AL.
*v.* TOWN OF GLASTONBURY*

Superior Court, Judicial District of Hartford
File No. LND-CV-09-5033344-S
Memorandum filed February 6, 2015

*Proceedings*

Memorandum of decision on defendant's motion to dismiss. *Motion granted.*

*Richard P. Weinstein*, for the plaintiffs.

*Matthew Ranelli* and *Beth Bryan Critton*, for the defendant.

*Opinion*

BERGER, J.

I

The plaintiffs, Hayes Family Limited Partnership, Richard P. Hayes, Jr., and Manchester/Hebron Avenue, LLC,[1] seek damages from the defendant, the town of Glastonbury, under a legal theory of inverse condemnation involving the plaintiffs' property at 1199 Manchester Road in Glastonbury. On November 29, 2005, the town's Plan and Zoning Commission denied the plaintiffs' application for a special permit to construct a CVS pharmacy on the property. The plaintiffs argue that this constituted a taking without just compensation under article first, § 11, of the constitution of Connecticut and the fourteenth amendment to the constitution of the United States.

The present case is another chapter in the continuing litigation between the parties. The plaintiffs appealed from the commission's denial of their special permit application to the Superior Court in *Hayes Family Ltd. Partnership* v. *Town Plan & Zoning Commission*, Superior Court, judicial district of Hartford, Docket No. CV-06-4019700-S, 2007 WL 2245790. The court, *Miller, J.*, dismissed the appeal on July 19, 2007. The plaintiffs petitioned for certification to appeal, arguing that the trial court improperly concluded that substantial evidence in the record supported the denial and that the commission lacked discretion to deny an application for a special permit when the applicant complied with all applicable zoning regulations. Those arguments were rejected, and the trial court's decision was affirmed on July 14, 2009. *Hayes Family Ltd. Partnership* v. *Town Plan & Zoning Commission*, 115 Conn. App. 655, 974 A.2d 61, cert. denied, 293 Conn. 919, 979 A.2d 489 (2009).

The focus now before this court concerns only the inverse condemnation claim based upon the commission's November 29, 2005 denial of the plaintiffs' special permit application. "An inverse condemnation action does not concern itself with the propriety of the board's action. The only inquiry is whether a taking has, in fact, occurred." *Cumberland Farms, Inc.* v. *Groton*, 247 Conn. 196, 208, 719 A.2d 465 (1998). "An inverse condemnation claim accrues when the purpose of government regulation and its economic effect on the property owner render the regulation substantially equivalent to an eminent domain proceeding. . . . [W]hether a claim that a particular governmental regulation or action taken thereon has deprived a claimant of his property without just compensation is an essentially ad hoc factual inquir[y]. . . . Short of regulation which finally restricts the use of property for any reasonable purpose resulting in a practical confiscation, the determination of whether a taking has occurred

must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner." (Internal quotation marks omitted.) *Lost Trail, LLC* v. *Weston*, 140 Conn. App. 136, 146, 57 A.3d 905, cert. denied, 308 Conn. 915, 61 A.3d 1102 (2013). "Connecticut law on inverse condemnation requires total destruction of a property's economic value or substantial destruction of an owner's ability to use or enjoy the property." *Bristol* v. *Tilcon Minerals, Inc.*, 284 Conn. 55, 85, 931 A.2d 237 (2007).

The plaintiffs filed their first suit alleging inverse condemnation on January 30, 2006, but withdrew it on September 9, 2009.[2] *Hayes Family Ltd. Partnership* v. *Town Plan & Zoning Commission*, Superior Court, judicial district of Hartford, Docket No. CV-06-4020760-S. On October 1, 2009, the plaintiffs commenced the present action. The court, *Aurigemma, J.*, granted the defendant's motion to dismiss on August 4, 2010. On appeal, the Appellate Court reversed the trial court's decision because it failed to hold an evidentiary hearing on whether the plaintiffs established the finality of the commission's determination, thereby providing the trial court with subject matter jurisdiction. *Hayes Family Ltd. Partnership* v. *Glastonbury*, 132 Conn. App. 218, 224, 31 A.3d 429 (2011). The case was remanded to this court for consideration of this directive. Id. By agreement of the parties, evidence was also received, and the matter was heard as a trial on the merits, albeit in a bifurcated manner, addressing issues of liability only. Hence, if this court were to conclude that the plaintiffs have proven finality, the court would deny the motion to dismiss and then consider whether the plaintiffs were successful in proving their allegation of inverse condemnation.

Trial occurred on November 5, 2013, through November 8, 2013,[3] and on December 17, 2013. At the close of the plaintiffs' case on December 17, 2013, the defendant orally moved for judgment of dismissal under Practice Book § 15-8,[4] alleging that the plaintiffs failed to make a prima facie case that the defendant's actions in denying the special permit constituted the finality required to make a regulatory takings claim. The defendant filed its motion on December 23, 2013, the plaintiffs filed a memorandum of law in opposition on January 15, 2014, and this court heard oral argument and denied the motion on March 31, 2014.[5] Trial continued on June 24, 2014, through June 26, 2014. The plaintiffs filed a supplemental brief on July 30, 2014, and the defendant its supplemental brief on September 5, 2014. Posttrial oral argument was heard on November 6, 2014.

II

A

As stated by the Appellate Court, "[t]he plaintiffs own a 2.4 acre parcel of land located at 1199 Manchester Road in Glastonbury. The property is comprised of a ledge, which rises steeply from the edges of the southwesterly corner of the intersection of Hebron Avenue and Manchester Road to a heavily wooded plateau abutting an established single-family neighborhood in a rural residential zone. On June 27, 2005, the plaintiffs filed a special permit application with the Glastonbury planning and zoning commission (commission). The plaintiffs proposed to build a 13,013 square foot, thirty-two foot high building with seventy parking spaces and a drive-through window on the property. On November 29, 2005, the commission denied the plaintiffs' application, citing the project's scale and intensity in relation to the size and topography of the parcel, its impact on and lack of compatibility with the existing neighborhood and the inadequacy of the proposed landscaping." Id., 219–20.

In the previous land use appeal, the Appellate Court noted that the commission denied the application because: "(1) The scale of the proposal (building size and associated infrastructure) is inappropriate based upon the project intensity in relationship to the parcel size and steep topography. Site development activity and topographic modifications in the form of grading, excavation, vegetation removal and construction of a large retaining wall exceeds acceptable conditions and therefore does not meet the intent and standards of [s]ection 12 ([s]pecial [p]ermit with [d]esign [r]eview) of the [b]uilding [z]one [r]egulations.

"(2) The project would result in an unacceptable level of impact on neighboring properties, in the form of both noise and visual intrusions, and on the environment, and is therefore incompatible with the existing neighborhood.

"(3) Landscaping proposed will not adequately replace existing vegetation nor provide adequate buffering to residential properties."[6] (Internal quotation marks omitted.) *Hayes Family Ltd. Partnership* v. *Town Plan & Zoning Commission*, supra, 115 Conn. App. 658 n.3.

B

The plaintiffs allege that the commission's denial of their special permit constitutes a taking without just compensation. In the decision granting the motion to dismiss, the court, *Aurigemma, J.*, discussed the substantive law concerning land use takings and the issue of finality or alternative use. Notwithstanding the Appellate Court's remand, the trial court's review of the substantive law is sound, and this court adopts the reasoning and sets forth part of that discussion here:

"The issues of when and whether regulatory action constitutes taking of property was addressed by the

Connecticut Supreme Court in *Gil* v. *Inland Wetlands & Watercourses Agency*, 219 Conn. 404, 415, 593 A.2d 1368 (1991), where the Court stated:

" 'As we have recently reiterated, however, the plaintiff is not entitled to judicial review of the merits of his regulatory takings claim until he has met the requirement of establishing the finality of the agency determination. . . . To demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow any reasonable alternative use of his property.' . . .

"In *Gil*, the plaintiff submitted four applications to the Greenwich Inland Wetlands & Watercourses Agency. Each application was denied. The trial court and the Appellate Court determined that the Agency's denials of the four applications were sufficient to establish finality. The Court disagreed, stating:

" 'First, although we agree with the Appellate Court that the plaintiff had a reasonable expectation of developing the property for residential purposes, the wetlands status of a portion of the property should also have warned the plaintiff that development would be difficult and that repeated applications might be necessary before the agency would approve an application for a building permit.' [Id., 416].

" 'Furthermore, although the plaintiff's final application reduced the footprint of the proposed house to 1800 square feet from the 2100 square feet of the preceding application, the final application nonetheless represented an increase from an earlier application's 1500 square feet proposed residence. In light of these factors, *we cannot say that the agency would have rejected a more modest proposal if one had been offered by the plaintiff.*

" 'Our conclusion is not inconsistent with our decision in *Port Clinton Associates* v. *Board of Selectmen*, [217 Conn. 588, 587 A.2d 126, cert. denied, 502 U.S. 814, 112 S. Ct. 64, 116 L. Ed. 2d 39 (1991)]. We there stated that although repeated applications and denials are not necessary to show finality, in most cases, a property owner must do more than submit one plan to an agency in order to establish that the agency's decision is final for the purposes of the takings clause. . . . We further noted that the [r]*ejection of exceedingly grandiose development plans does not logically imply that less ambitious plans will receive similarly unfavorable reviews.*' . . . *Gil* v. *Inland Wetlands & Watercourses Agency*, supra [219 Conn.] 416–17. (Citation omitted; emphasis altered.)

"In *MacDonald, Sommer & Frates* v. *Yolo County*, 477 U.S. 340, 348–49, 106 S. Ct. 2561, 91 L. Ed. 2d 285 (1986), cited by the Court in *Gil*, the plaintiff's application to develop a 159-unit residential subdivision in

California was rejected for a number of reasons. As the plaintiffs here, the plaintiff in *MacDonald* argued that any use of the property in question would not be permitted for the same reasons as those given by the County Planning Commission when it rejected the plaintiff's application. The County Commission demurred to the plaintiff's complaint alleging a taking of its property for failure to state a cause of action and the California Supreme Court, the California Court of Appeal and the United States Supreme Court all held that the plaintiffs had failed to allege facts which would establish an unconstitutional taking of private property:

" 'Here plaintiff applied for approval of a particular and relatively intensive residential development and the application was denied. The denial of that particular plan cannot be equated with a refusal to permit any development, and plaintiff concedes that the property is zoned for residential purposes in the County general plan and zoning ordinance. Land use planning is not an all-or-nothing proposition. A governmental entity is not required to permit a landowner to develop property to [the] full extent he might desire or be charged with an unconstitutional taking of the property.'

" 'Here, as in *Agins* [v. *Tiburon*, 447 U.S. 255, 260, 100 S. Ct. 2138, 65 L. Ed. 2d 106 (1980)], the refusal of the defendants to permit the intensive development desired by the landowner does not preclude less intensive, but still valuable development. Accordingly, the complaint fails to state a cause of action.' *McDonald, Sommer & Frates* v. *Yolo County*, supra, [477 U.S. 347]. . . .

"The plaintiffs have cited *Cumberland Farms, Inc.* v. *Groton*, [supra, 247 Conn. 196], to support their argument that the denial of a single application is sufficient to establish a taking. However, that case was brought after the denial of a use variance by the zoning board of appeals based on a finding of the lack of a hardship. Crucial to the Court's finding of finality was the 'prior application rule,' which prohibits a zoning board of appeals from reversing a previous decision with respect to the issue of hardship absent a material change in circumstances.

"There is no similar doctrine with respect to applications for special permits. It is clear from *Gil* v. *Inland Wetlands & Watercourses Agency*, supra, [219 Conn. 417] that [r]ejection of exceedingly grandiose development plans does not logically imply that less ambitious plans will receive similarly unfavorable reviews. In addition, [a] governmental entity is not required to permit a landowner to develop property to [the] full extent he might desire or be charged with an unconstitutional taking of the property." (Citations omitted; emphasis in original.) *Hayes Family Ltd. Partnership* v. *Glastonbury*, Superior Court, judicial district of Hartford, Docket No. CV-09-5033344-S, 2010 WL 3447792, *3–*5

(August 4, 2010) (*Aurigemma, J.*), rev'd on other grounds, 132 Conn. App. 218, 31 A.3d 429 (2011).

Since the Appellate Court's reversal and remand of the trial court's decision to grant the motion to dismiss in this case, the Appellate Court has rendered its opinion in *Lost Trail, LLC* v. *Weston*, supra, 140 Conn. App. 136. The court in *Lost Trail, LLC*, affirmed the judgment of the trial court that had rejected an inverse condemnation claim based upon a municipal decision requiring the petitioner to obtain subdivision approval for a proposed development. Id., 148–50. "A final decision has been rendered when the initial decision-maker [has] arrived at a definitive position on the issue that inflict[ed] an actual, concrete injury . . . . If a property owner has not obtained a final decision from the administrative agency applying the regulation, the reviewing court lacks jurisdiction to rule on a taking claim. The jurisdictional nature of finality derives from its similarity to ripeness." (Citation omitted; internal quotation marks omitted.) Id., 147.

### III

In *Hayes Family Ltd. Partnership* v. *Town Plan & Zoning Commission*, supra, 115 Conn. App. 661–62, the Appellate Court noted that "[t]he commission heard evidence that to build the largest CVS possible, the plaintiffs sought to remove the existing hillside comprising the subject property, excavating to within twenty-five feet of the property lines of abutting residential properties, more than 80,000 cubic yards of material, and build a steep-sloped 225 foot long, fourteen foot high retaining wall to accommodate a 13,013 square foot building with a drive-through window, surrounded on three sides by six foot wide sidewalks, two dumpsters, loading docks and seventy parking spaces. The record reflects that the proposed retaining wall was among the largest that the commission had ever reviewed and that it was atypical in that such steep slopes are generally found in connection with road construction projects, not residential neighborhoods. The evidence revealed that the removal of the excavated material from the site would require more than 5700 dump truck loads and more than 11,000 round trips, with a truck leaving the site every two minutes. All existing vegetation would be stripped, and the newly formed slope would be so steep as to render it unlikely to sustain the sparse vegetation proposed by the plaintiffs as a buffer to nearby homes."

In the present case, the trial court, *Aurigemma, J.*, was provided with affidavits, attached to the plaintiffs' memorandum of law in opposition to the motion to dismiss (pleading #107.00), from Patrick N. O'Leary, an engineer with Vanasse, Hangen, Brustlin, Inc., as well as from Arthur B. Estrada, an appraiser. Both also testified before this court, and their affidavits were offered into evidence. (Pls. exhs. 33 and 36.) Their oral testimony

offered similar conclusions to those stated in the affidavits. Indeed, O'Leary's conclusions, seven through nine, reported by Judge Aurigemma, are *essentially* the same:

"7. In undertaking that review, I have considered several hypothetical alternative uses, including the construction of a single-story commercial building that might, for example, be used for . . . a bank branch building, and the construction of a two-story commercial building of anywhere between 13,000 and 18,000 square feet (with about half such amount allocated to each story) that might be used as an office building. Such uses would be smaller in scale than the CVS Pharmacy proposal that was rejected by the Commission.

"8. I believe that, based on the topography and location of the Property, none of those hypothetical alternative proposals will avoid the reasons previously identified by the Commission as a basis for denying the Special Permit application for the Property.

"9. Specifically, the construction of any such hypothetical alternative use buildings will require significant excavation of the Property and the removal of materials from the Property. The impacts to the existing grade of the site and landscape would be similar to those of the CVS Pharmacy proposal due to the topographical relief associated with the site. The disturbance to the Property for grading and vegetation removal is likely to be similar for such commercial buildings as it was for the CVS Pharmacy proposal. Furthermore, the construction of buildings for such alternative commercial uses at the Property will likely have a similar impact on neighboring properties, in terms of noise and visual intrusions, when compared to that of the proposed CVS Pharmacy. Landscaping and buffering associated with such alternative commercial uses would be similar to those for the CVS Pharmacy proposal due to the excavation sideslopes that would be required to address the topographic relief at the Property." (Internal quotation marks omitted.) *Hayes Family Ltd. Partnership* v. *Glastonbury*, supra, 2010 WL 3447792, *2–*3.

Although reminded by both the court and the defendant that the denial of the special permit application was beyond challenge, much of the proffer of this testimony could easily be interpreted to be further argument on the first CVS proposal. For instance, the extent of the massive excavation necessitated an extensive discussion of the proposed slope, ingress and egress grades, and buffers. Both O'Leary and Hayes testified that a two-to-one slope was compliant, the 8 percent grade was compliant, and the landscape buffering was generous, extensive, and appropriate. Nevertheless, both Judge Miller and the Appellate Court in the previous zoning appeal found that "there was adequate evidence to support the commission's reasons for denying the special permit." *Hayes Family Ltd. Partnership* v. *Glastonbury*, supra, 115 Conn. App. 662. The plaintiffs

appear to accept—albeit reluctantly—our courts' refusal to set aside the commission decision, but only if it means that they are compensated for that decision.

The plaintiffs misunderstand the nature of the police power as it applies to land use development. "Public regulation of land use and development pursuant to the exercise of the police power often results in some diminution of the property rights of a particular landowner. . . . [I]t has often been noted that the police power, which regulates for the public good the uses to which private property may be put and requires no compensation, must be distinguished from the power of eminent domain, which takes private property for a public use and requires compensation to the owner." (Citations omitted; internal quotation marks omitted.) *Luf* v. *Southbury*, 188 Conn. 336, 349, 449 A.2d 1001 (1982); see also *Brecciaroli* v. *Commissioner of Environmental Protection*, 168 Conn. 349, 354–55, 362 A.2d 948 (1975). A denial of one application does not necessarily constitute a fifth amendment taking. First, a plaintiff must prove, as discussed previously, that he or she has been denied all reasonable use of the property. This is known as the finality doctrine. "[T]he plaintiff is not entitled to judicial review of the merits of his regulatory takings claim until he has met the requirement of establishing the finality of the agency determination." *Gil* v. *Inland Wetlands & Watercourses Agency*, supra, 219 Conn. 415; see also *Lost Trail, LLC* v. *Weston*, supra, 140 Conn. App. 147 ("[u]ntil a property owner has obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property, it is impossible to tell whether the land retain[s] any reasonable beneficial use or whether [existing] expectation interests ha[ve] been destroyed" [internal quotation marks omitted]); *Hayes Family Ltd. Partnership* v. *Glastonbury*, supra, 132 Conn. App. 223 ("[t]o demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow any reasonable alternative use of his property" [internal quotation marks omitted]); *Murphy* v. *New Milford Zoning Commission*, 402 F.3d 342, 348 (2d Cir. 2005) ("[r]equiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution").

Hayes testified about two other hypothetical proposals cast within the framework of the denial to develop the CVS. They were presented to this court as alternatives that the plaintiffs argue would also have failed to be approved under the reasoning of the denial of the first application. Nevertheless, these alternatives were never presented and never reviewed or considered by the commission;[7] nor were any others. While the plaintiffs believe they need not present another application,

"[s]trength of unilateral conviction is not, however, a substitute for a final administrative decision."[8] *Lost Trail, LLC* v. *Weston*, supra, 140 Conn. App. 148–49.

"To demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow *any* reasonable alternative use of his property." (Emphasis in original.) *Gil* v. *Inland Wetlands & Watercourses Agency*, supra, 219 Conn. 415. It is difficult to meet this burden with one application, especially when even the developer's own engineer stated that "in my professional opinion, I think there is a reasonable possibility that a layout of this nature could be approved by a municipality, including Glastonbury." (Transcript [tr.], November [Nov.] 8, 2013, pp. 34–35.) The plaintiffs argue that *Cumberland Farms, Inc.* v. *Groton*, supra, 247 Conn. 196, allows an inverse condemnation case based upon one denial. As previously set forth, the court in *Cumberland Farms, Inc.*, concluded that a zoning board of appeals' denial of a variance constituted a final decision; id., 197; as opposed to the one initial special permit application in the present case. *Cumberland Farms, Inc.*, is thus instructive but not controlling herein.

This court heard testimony about the existence of smaller CVS store prototypes, and O'Leary was not sure which prototype was in use in 2005.[9] (Tr., Nov. 8, 2013, pp. 18–20.) He indicated that the size of the project was determined on a site by site basis. (Tr., Nov. 8, 2013, pp. 23–25.) Constructing a smaller building and moving the top of the slope farther from the houses would also reduce other impacts of the project such as excavation, the retaining wall, vegetation loss, and parking. Perhaps more to the point, evidence was presented that there are other possible uses such as a CVS differently configured and with only one driveway[10] or other uses requiring less excavation. (Pls. exhs. 7-14.) The town introduced at least three concept plans reflecting a smaller footprint and a smaller impact.[11] (Defendant's [def.] exhs. 500, 501, and 517.) O'Leary noted that a smaller CVS might be approved on the site. (Tr., Nov. 8, 2013, pp. 32–36.)

At the November 6, 2014 posttrial oral argument, the plaintiffs argued that the reasons for the commission's denial of the special permit application, which were upheld by Judge Miller and the Appellate Court, set the bar that any new application would need to meet. In other words, the plaintiffs asserted, based upon the Appellate Court's decision in *Hayes Family Ltd. Partnership* v. *Town Plan & Zoning Commission*, supra, 115 Conn. App. 658 n.3, that any proposed development would necessarily "result in an unacceptable level of impact on neighboring properties, in the form of both noise and visual intrusions, and on the environment, and [would] be therefore incompatible with the existing

neighborhood." (Internal quotation marks omitted.)

Nevertheless, while the plaintiffs' property does not contain wetlands like that in *Gil*, it requires extensive excavation and regrading. Thus, *Gil* is clearly applicable here. "[T]he . . . status of a portion of the property should also have warned the plaintiff that development would be difficult and that repeated applications might be necessary before the agency would approve an application for a building permit." *Gil* v. *Inland Wetlands & Watercourses Agency*, supra, 219 Conn. 416. Indeed, "in most cases, a property owner must do more than submit one plan[12] to an agency in order to establish that the agency's decision is final for the purposes of the takings clause. . . . [T]he [r]ejection of exceedingly grandiose development plans does not logically imply that less ambitious plans will receive similarly unfavorable reviews." (Citation omitted; footnote added; internal quotation marks omitted.) Id., 417.

The rejection of the 13,000 square foot CVS prototype, without examining whether an alternative might pass muster, does not establish finality. Moreover, this court does not agree with the plaintiffs that a revised application for a different development with presumably a different impact might not be acceptable under the reasons for denial in the first application. "[B]y refusing to engage the commission in the zoning approval process, [the applicant] eliminated the possibility that this matter could be resolved by local political choices and settlements." *Lost Trail, LLC* v. *Weston*, supra, 140 Conn. App. 149. "[A] court, in the proper circumstances, is well advised to stay its hand to allow for political choices and settlements that are outside of the judicial competence. It is for the town . . . in the first instance to decide whether to exercise the police power in order to reach an accommodation with the plaintiffs." *Luf* v. *Southbury*, supra, 188 Conn. 353–54.

In light of the evidence, the plaintiffs have failed to meet their burden to prove finality. Accordingly, the town's motion to dismiss is granted.

* Affirmed. *Hayes Family Ltd. Partnership* v. *Glastonbury*, 166 Conn. App. 585, A.3d (2016).

[1] According to testimony of Hayes, he purchased the property in his name and transferred it to Manchester/Hebron Avenue, LLC, the named applicant before the commission.

[2] Additionally, Hayes Family Limited Partnership, along with Manchester-Hebron Avenue, LLC, also filed a suit that was a bill of discovery against certain individuals, namely, Attorney David F. Sherwood, Frank Longobardi, Patricia Synhorst, John Flanigan, and 1312 Manchester Road, LLC, to determine who opposed their special permit application and who paid Sherwood's fees. Motions to strike the action against the individual defendants were granted on June 25, 2008. *Hayes Family Ltd. Partnership* v. *Sherwood*, Superior Court, judicial district of Hartford, Docket No. CV-08-4035887-S (June 25, 2008) (*Hon. Richard M. Rittenband*, judge trial referee) (45 Conn. L. Rptr. 772). On March 9, 2009, the court, *Elgo, J.*, entered judgment against the plaintiffs as to the individual defendants, and the matter was withdrawn as to the defendant partnership on March 30, 2009.

[3] On November 6, 2013, the court, with counsel and representatives of the parties, viewed the subject premises.

[4] Practice Book § 15-8 provides: "If, on the trial of any issue of fact in a

civil matter tried to the court, the plaintiff has produced evidence and rested, a defendant may move for judgment of dismissal, and the judicial authority may grant such motion if the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made."

[5] The motion was denied based upon *Charter Oak Lending Group, LLC* v. *August*, 127 Conn. App. 428, 434, 14 A.3d 449, cert. denied, 302 Conn. 901, 23 A.3d 1241 (2011). "The standard for determining whether the plaintiff has made out a prima facie case, under Practice Book § 15-8, is whether the plaintiff put forth sufficient evidence that, *if believed*, would establish a prima facie case, not whether the trier of fact believes it. . . . For the court to grant the motion [for judgment of dismissal pursuant to Practice Book § 15-8], it must be of the opinion that the plaintiff has failed to make out a prima facie case. In testing the sufficiency of the evidence, the court compares the evidence with the allegations of the complaint. . . . In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . [T]he evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiff's] favor." (Emphasis in original; internal quotation marks omitted.) Id.

In the present case, the Appellate Court acknowledged that "the plaintiffs were required to establish the finality of the commission's determination to confer subject matter jurisdiction on the court. . . . On the basis of the complaint and the affidavits submitted by both parties, the court determined that the plaintiffs could not prove finality because the plaintiffs only submitted one special permit application for a particularly intensive development." (Citations omitted.) *Hayes Family Ltd. Partnership* v. *Glastonbury*, supra, 132 Conn. App. 223. As previously noted, the Appellate Court found that in light of our motion practice, an evidentiary hearing was required on factual disputes. Id., 223–24. The motion for judgment of dismissal, taking the plaintiffs' evidence as true, cannot really address the fundamental issue of the finality of the agency decision with only one application, i.e., if there are other uses for the property, and, more importantly, if any other application would be rejected. The finality issue is addressed in this decision notwithstanding the denial of the motion for judgment of dismissal. Of course, a plaintiff's initial success in establishing a prima facie case does not equate to success on the merits; the plaintiff's testimony can be rebutted. See, e.g., *Fisher* v. *Big Y Foods, Inc.*, 298 Conn. 414, 419 n.10, 3 A.3d 919 (2010); *Eagen* v. *Commission on Human Rights & Opportunities*, 135 Conn. App. 563, 577 n.5, 42 A.3d 478 (2012).

[6] (See also plaintiffs' [pls.] exhibit [exh.] 25.)

[7] The plaintiffs introduced evidence at trial that after the commission denied their application, they attempted to seek a variance from the Zoning Board of Appeals allowing them to construct the building closer to the front yard line on both Manchester Road and Hebron Avenue. After a public hearing and discussion on December 4, 2006, the board denied the request by a vote of two to three. (Pls. exhs. 26-27.) The plaintiffs did not appeal from that decision, nor is that denial a basis for the present case. Furthermore, a request for a variance is different from an application for a special permit.

[8] To the extent the plaintiffs argue that no plan would satisfy the commission and that submitting further applications would be futile, "[a]lthough a property owner need not pursue 'patently fruitless measures' to satisfy the finality doctrine . . . it cannot claim futility by setting up its own obstacles." (Citation omitted.) *Lost Trail, LLC* v. *Weston*, supra, 140 Conn. App. 151–52.

[9] At posttrial oral argument on November 16, 2014, it was noted that the variance request involved a CVS that was *smaller* than the one proposed to the commission.

[10] O'Leary testified that some CVS stores had just one entrance and exit. (Tr., Nov. 8, 2013, p. 27.)

[11] Indeed, at the November 29, 2005 meeting, commission members indicated that the plaintiffs might develop the property in a less intensive manner than that proposed in the original and only special permit application. (Defendant's [def.] exh. 521, p. 18.)

[12] At oral argument on the motion for judgment of dismissal on March 31, 2014, the plaintiffs' counsel questioned whether the issue being debated was indeed the number of submitted applications. *Gil* reminds us that it is the substantive difference in the applications that is of concern. *Gil* v. *Inland Wetlands & Watercourses Agency*, supra, 219 Conn. 416–17.