HAYES FAMILY LIMITED PARTNERSHIP ET AL. *v.*
TOWN PLAN AND ZONING COMMISSION OF THE
TOWN OF GLASTONBURY
(AC 29304)

Bishop, Harper and Schaller, Js.

Argued April 28—officially released July 14, 2009

*Robert A. Fuller*, with whom was *Stephen T. Penny*, for the appellants (plaintiffs).

*Beth Bryan Critton*, with whom was *David F. Sherwood*, for the appellees (defendants).

*Opinion*

BISHOP, J. The plaintiffs, the Hayes Family Limited Partnership, Richard P. Hayes, Jr., and the Manchester/ Hebron Avenue, LLC, appeal from the judgment of the trial court dismissing their zoning appeal from the decision of the town plan and zoning commission of the town of Glastonbury (commission). On appeal, the

plaintiffs claim that the commission does not have discretion to deny an application for a special permit when, as in this case, the applicant has complied with all applicable zoning regulations. The plaintiffs further contend that the court improperly concluded that there was substantial evidence in the record to support the commission's reasons for the denial of their application for a special permit.[1] We disagree and, accordingly, affirm the judgment of the trial court.

The following facts are relevant to the resolution of the plaintiffs' appeal. On June 27, 2005, the plaintiffs filed an application for a special permit to construct a CVS pharmacy on a 2.4 acre parcel of land located at the corner of Hebron Avenue (Route 94) and Manchester Road (Route 83) in Glastonbury. The plaintiffs proposed to construct a 13,013 square foot, thirty-two foot high building with seventy parking spaces and a drive-through window on the property. The subject property is comprised of a ledge, which rises steeply from the edges of the roadways to a heavily wooded plateau abutting an established single-family neighborhood in the rural residential zone. The execution of the plaintiffs' proposal would require the excavation of 80,000 cubic yards of rock and the erection of a 225 foot retaining wall backed by 2:1 slopes.[2] The subject property and the adjacent property to the west, which is occupied by a Shell gasoline station, are located in the planned business and development zone; all other surrounding property on the south side of Hebron Avenue is zoned rural residential. Although the subject property is zoned for commercial development, all uses

---

[1] The plaintiffs also claim that the intervening defendants, abutting landowners who have sold their interest in their neighboring properties, should not have been allowed to maintain their intervenor status after they sold their properties. Because the intervening defendants did not participate in the appeal, and their status as intervenors has no bearing on the resolution of the plaintiffs' claims on appeal, we need not address this issue.

[2] Such slopes are one foot of vertical rise in two feet of horizontal distance.

in the planned business and development zone require a special permit with design review approval.

Commencing on September 6, 2005, the commission held public hearings on the plaintiffs' special permit application. On November 29, 2005, the commission denied the plaintiffs' application because of its scale and intensity in relation to the size and topography of the parcel, its impact on and lack of compatibility with the existing neighborhood and the inadequacy of the proposed landscaping.[3]

Thereafter, the plaintiffs appealed to the Superior Court. The court dismissed the plaintiffs' appeal, stating that the commission's decision was supported by substantial evidence in the record. This appeal followed.

We begin our analysis by setting forth the standard of review for the denial of an application for a special permit. Our Supreme Court has "observed that [a] special [permit] allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . Nevertheless, special [permits], although expressly permitted by local regulations, must satisfy [certain conditions and] standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety,

_____

[3] Specifically, the commission denied the plaintiffs' application because: "(1) The scale of the proposal (building size and associated infrastructure) is inappropriate based upon the project intensity in relationship to the parcel size and steep topography. Site development activity and topographic modifications in the form of grading, excavation, vegetation removal and construction of a large retaining wall exceeds acceptable conditions and therefore does not meet the intent and standards of [s]ection 12 ([s]pecial [p]ermit with [d]esign [r]eview) of the [b]uilding [z]one [r]egulations.

"(2) The project would result in an unacceptable level of impact on neighboring properties, in the form of both noise and visual intrusions, and on the environment, and is therefore incompatible with the existing neighborhood.

"(3) Landscaping proposed will not adequately replace existing vegetation nor provide adequate buffering to residential properties."

convenience and property values [as required by General Statutes § 8-2]. . . . Moreover, we have noted that the nature of special [permits] is such that their precise location and mode of operation must be regulated because of the topography, traffic problems, neighboring uses, etc., of the site." (Internal quotation marks omitted.) *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission,* 285 Conn. 381, 426, 941 A.2d 868 (2008). "Review of a special permit application is inherently fact-specific, requiring an examination of the particular circumstances of the precise site for which the special permit is sought and the characteristics of the specific neighborhood in which the proposed facility would be built." *Municipal Funding, LLC* v. *Zoning Board of Appeals,* 270 Conn. 447, 457, 853 A.2d 511 (2004).

The plaintiffs contend that because they complied with the Glastonbury building zone regulations (regulations) regarding such requirements as the size of the building, the distance it must be set back from the roadways and the number of parking spaces permitted, the commission did not have the authority or the discretion to deny their application. The plaintiffs' argument, however, misstates the law and ignores the regulations regarding special permits.

Section twelve of the regulations sets forth the requirements for special permits with design review approval and authorizes the commission to grant a special permit for the purpose of "meeting the provisions of this section and these [r]egulations." Section 12.4 requires the commission to consider four general criteria: appropriateness of location or use; conformance with Glastonbury building zone regulations or other applicable laws, codes or ordinances; safety, health and environment; and overall design, architectural treatment and aesthetic character. Included in these general categories are the specific considerations of the size

and intensity of the proposed use and its effect on and compatibility with the neighborhood; the topography and landscaping of the site; and the effect on values and utilization of neighborhood properties; the preservation of the character of the neighborhood. Additionally, § 12.5 requires the commission to consider similar factors such as the size and topography of the property, its existing and proposed contours, existing trees and shrubs and proposed landscaping, and the relationship of the proposed uses with the land. The commission's reasons for denying the plaintiffs' application trace much of the language of §§ 12.4 and 12.5 of the regulations. Thus, the commission had the discretion to deny the plaintiffs' application for a special permit on the basis of the reasons cited.[4]

We now consider whether the evidence before the commission adequately supports the reasons given for its decision. "In reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule, according to which . . . [c]onclusions reached by [a zoning] commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [commission]. . . . The question is not whether the trial court would have reached the same conclusion . . . but whether the record before the [commission] supports the decision reached. . . . If a trial court finds that there is substantial evidence to support a zoning board's findings, it cannot substitute its judgment for that of the board. . . . If there is conflicting evidence in support of the zoning commission's stated rationale,

---

[4] The plaintiffs claim that the commission could not deny their application on the basis of the consideration of a neighboring residential zone and that the commission's "neighborhood" considerations should have been limited to the commercial zone. The plaintiffs have provided no basis for this argument either in the law or in the regulations, nor have we found any. Accordingly, we conclude that this claim is without merit.

the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Internal quotation marks omitted.) *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, supra, 285 Conn. 427. "[E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Zoning Board of Appeals*, 74 Conn. App. 622, 627, 814 A.2d 396, cert. denied, 263 Conn. 901, 819 A.2d 836 (2003).

Here, the record amply supports the commission's decision. The commission heard evidence that to build the largest CVS possible, the plaintiffs sought to remove the existing hillside comprising the subject property, excavating to within twenty-five feet of the property lines of abutting residential properties, more than 80,000 cubic yards of material, and build a steep-sloped 225 foot long, fourteen foot high retaining wall to accommodate a 13,013 square foot building with a drive-through window, surrounded on three sides by six foot wide sidewalks, two dumpsters, loading docks and seventy parking spaces. The record reflects that the proposed retaining wall was among the largest that the commission had ever reviewed and that it was atypical in that such steep slopes are generally found in connection with road construction projects, not residential neighborhoods. The evidence revealed that the removal of the excavated material from the site would require more than 5700 dump truck loads and more than 11,000 round trips, with a truck leaving the site every two minutes. All existing vegetation would be stripped, and the newly formed slope would be so steep as to render it unlikely to sustain the sparse vegetation proposed by

the plaintiffs as a buffer to nearby homes. Additionally, evidence was presented that the plaintiffs' proposal would directly impact neighboring residential properties not only by way of increased noise and traffic, but also in that it would adversely affect their property values. On the basis of the foregoing and our thorough examination of the record, we conclude that there was adequate evidence to support the commission's reasons for denying the special permit.

The judgment is affirmed.

In this opinion the other judges concurred.