CITY OF MERIDEN *v.* PLANNING AND ZONING
COMMISSION OF THE TOWN
OF WALLINGFORD
(AC 34290)

DiPentima, C. J., and Robinson and Bear, Js.

Argued February 14—officially released October 1, 2013

*Deborah Leigh Moore,* corporation counsel, for the appellant (plaintiff).

*Janis M. Small,* corporation counsel, for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. The plaintiff, the city of Meriden, appeals from the judgment of the Superior Court dismissing its administrative appeal from the decision of the defendant, the Planning and Zoning Commission of the town of Wallingford, denying its application for a special permit. On appeal, the plaintiff claims that the defendant's denial of the special permit application was not supported by substantial evidence.[1] We disagree,

[1] The plaintiff also claims that the trial court employed an improper standard of review. Specifically, the plaintiff argues that the trial court's analysis was limited to whether the defendant's decision to deny the special permit application was "reasonably supported by the record." It then directs our attention to *Heithaus* v. *Planning & Zoning Commission,* 258 Conn. 205, 215, 779 A.2d 750 (2001), in which our Supreme Court stated: "Legislative decisions reached by [a zoning] commission must be upheld by the trial court if they are reasonably supported by the record. . . . In appeals from administrative zoning decisions, by contrast, the decisions will be invalidated even if they were reasonably supported by the record, if they were not supported by substantial evidence in that record." (Citation omitted; internal quotation marks omitted.); see also *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission,* 284 Conn. 838, 853, 937 A.2d 39 (2008).

A separate line of cases, however, provides that, even in the administrative context, "[i]n reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule, according to which . . . [c]onclusions reached by [a zoning] commission must be upheld by the trial court if they are reasonably supported by the record." (Internal quotation marks omitted). *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission,* 285 Conn. 381, 427, 941 A.2d 868 (2008); see also *Municipal Funding, LLC* v. *Zoning Board of Appeals,* 270 Conn. 447, 453, 853 A.2d 511 (2004); *Hayes Family Ltd. Partnership* v. *Town Plan & Zoning Commission,* 115 Conn. App. 655, 660–61, 974 A.2d 61, cert. denied, 293 Conn. 919, 979 A.2d 489 (2009).

Thus, the trial court here acted in accordance with recent appellate authority. Moreover, to the extent that there is a conceivable conflict in our case law, the present case is not the vehicle for a resolution. First, it is axiomatic that this court cannot reconsider the precedents of our Supreme Court. See

and, accordingly, affirm the judgment of the Superior Court.

The following facts and procedural history are relevant to this appeal. In July, 2007, the plaintiff, the owner of a parcel of land in Wallingford, applied for a special permit to use approximately six acres of a landfill for disposing of street sweepings, soil, concrete, bricks and various other nonhazardous materials generated from public works projects. Specifically, the plaintiff submitted its application pursuant to §§ 6.10 and 7.5 of the Wallingford Zoning Regulations.[2] The plaintiff wanted to construct and to operate a disposal cell at a closed landfill site on Hanover Street, located between two aquifer protection areas. The defendant conducted a hearing on August 13, 2007, and considered the plaintiff's application. At the hearing, representatives of the

_State_ v. _Taylor_, 132 Conn. App. 357, 369, 31 A.3d 872 (2011), appeal dismissed, 309 Conn. 83, 71 A.3d 464 (2013) (certification improvidently granted). Second, even if we assume arguendo that the trial court should have explicitly stated that there was substantial evidence, and not merely that the record supported the defendant's decision, we are free to make that determination at this state of the proceedings. As we recently stated: "[B]ecause the administrative record before us on appeal is identical to that which was before the trial court, the interests of judicial economy would not be served by a remand in this case. _Connecticut Light & Power Co._ v. _Dept. of Public Utility Control_, 216 Conn. 627, 639, 583 A.2d 906 (1990)." (Internal quotation marks omitted.) _Festa_ v. _Board of Education_, 145 Conn. App. 103, 120, 73 A.3d 904 (2013). As discussed later in this opinion, we conclude that the defendant's denial of the special permit was supported by substantial evidence in the record.

[2] Section 6.10 of the Wallingford Zoning Regulations provides in relevant part: "The excavation of land, stockpiling of earth products on a site, creation of ponds, and/or filling of land with earth products such as, but not limited to: topsoil, loam, sand, gravel, clay, stone or minerals shall be permitted in any zoning district subject to a Special Permit in accordance with Section 7.5. . . ."

Section 7.5.A.1 of the Wallingford Zoning Regulations provides: "A Special Permit shall be required for all uses specifically listed in these regulations." Section 7.5.B sets forth the criteria for evaluating a special permit and includes the appropriateness of location or use, conformance, safety, health and environment, and overall design.

plaintiff indicated that the site would not be used for trash and would be limited to use by the plaintiff's employees. The capacity of the disposal cell was 80,000 cubic yards and would have an operating life of ten to fifteen years. The plaintiff's representatives estimated that approximately 4000 to 6000 cubic yards of fill per year would be placed in the disposal cell.

Robert Parisi, the chairman of the Wallingford Town Council, spoke at the hearing, and stated that he had received "a lot of calls from residents in the area" who were opposed to the plaintiff's application. Mary G. Fritz, a state representative, also spoke against the application, questioning whether the disposal cell was compatible with the neighborhood. Finally, Robert Jacques, a Wallingford resident, opposed the application, noting that there would be an increased use and that other garbage in all likelihood would be placed in the disposal cell.

The defendant unanimously voted to deny the plaintiff's application for a special permit. The reason for the denial was that "based upon the . . . totality of the evidence, and based upon all matters raised at the hearing, it appears that the intensity of the proposed use is unacceptable, it will likely—will adversely affect the health, safety, and welfare of the community, and there's been no evidence that there are—are any technical constraints necessitating location on Wallingford property." In a letter dated August 16, 2007, the defendant notified the plaintiff as to the reasons for the denial of its special permit application.

In September, 2007, the plaintiff appealed the denial of its special permit application to the Superior Court. The court heard argument on July 29 and August 8, 2011.[3] In its October 14, 2011 memorandum of decision,

---

[3] The parties did not provide this court with a transcript from the July 29, 2011 proceeding.

the court dismissed the plaintiff's appeal. The court rejected the plaintiff's argument that the evidence did not support the defendant's decision to deny the special permit application. Specifically, the court stated: "The record reveals that the [defendant] had evidence before it that the property was no longer operating as a landfill, that [the plaintiff] sought to relocate an existing road, create a 10-12 foot berm and deposit up to 80,000 cubic yards of material on the site over a period of up to 15 years. Clearly this is an intensification of the use of the property and it is reasonably supported by the record and pertinent to the consideration which the [defendant] was required to apply." This appeal followed.

Before addressing the specific issues raised by the plaintiff, we set forth the legal principles regarding special permits. "General Statutes § 8-2 (a) provides in relevant part that local zoning regulations may provide that certain . . . uses of land are permitted only after obtaining a special permit or special exception . . . subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. . . . The terms special permit and special exception are interchangeable. . . . A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience and property values. . . . An application for a special permit seeks permission to vary the use of a particular piece of property from that for which it is zoned, without offending the uses permitted as of right in the particular zoning district. . . . When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity. . . . [Its] function . . . [is] to decide within prescribed limits

and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. . . . *Gevers* v. *Planning & Zoning Commission*, 94 Conn. App. 478, 481–82, 892 A.2d 979 (2006); see also *Housatonic Terminal Corp.* v. *Planning & Zoning Board*, 168 Conn. 304, 307, 362 A.2d 1375 (1975); see generally R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 5.1, pp. 135–37; T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) pp. 175–79." (Internal quotation marks omitted.) *Trumbull Falls, LLC* v. *Planning & Zoning Commission*, 97 Conn. App. 17, 20–21, 902 A.2d 706, cert. denied, 280 Conn. 923, 908 A.2d 545 (2006). We have observed that "the nature of special [permits] is such that their precise location and mode of operation must be regulated because of the topography, traffic problems, neighboring uses, etc., of the site. . . . Review of a special permit application is inherently fact-specific, requiring an examination of the particular circumstances of the precise site for which the special permit is sought and the characteristics of the specific neighborhood in which the proposed facility would be built." (Citation omitted; internal quotation marks omitted.) *Hayes Family Ltd. Partnership* v. *Town Plan & Zoning Commission*, 115 Conn. App. 655, 659, 974 A.2d 61, cert. denied, 293 Conn. 919, 979 A.2d 489 (2009). Guided by these principles, we turn to the specifics of the plaintiff's appeal.

The plaintiff claims that the defendant's decision was not supported by substantial evidence.[4] Within this

[4] The plaintiff also argues that the court improperly disregarded the testimony of its expert who described the use of the disposal cell as "low intensity." We reject this argument because it was the responsibility of the defendant, in the exercise of its discretion, to make that determination when evaluating the application pursuant to § 7.5.B of the Wallingford Zoning Regulations. See *Irwin* v. *Planning & Zoning Commission*, 244 Conn. 619, 626–28, 711 A.2d 675 (1998); *Quality Sand & Gravel, Inc.* v. *Planning & Zoning Commission*, 55 Conn. App. 533, 537–38, 738 A.2d 1157 (1999).

claim, it argues that the defendant "gave only general, nonspecific reasons as the basis of [its] unanimous denial" and that the court's reliance on the defendant's finding of intensification was improper and not supported by the record. We disagree.

Our Supreme Court has "concluded that general considerations such as public health, safety and welfare, which are enumerated in zoning regulations, may be the basis for the denial of a special permit. Also, [it has] stated that before the zoning commission can determine whether the specially permitted use is compatible with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns . . . would adversely impact the surrounding neighborhood. . . . Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court had to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Citations omitted; internal quotation marks omitted.) *Irwin* v. *Planning & Zoning Commission*, 244 Conn. 619, 627–28, 711 A.2d 675 (1998).

"In reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule . . . . The credibility of the witnesses and the determination of issues of fact are matters solely within

---

The plaintiff's final claim is that the court failed to determine whether the defendant acted fairly or with proper motives. After reviewing the record, we conclude that this claim is without merit.

the province of the [commission]. . . . The question is not whether the trial court would have reached the same conclusion . . . but whether the record before the [commission] supports the decision reached. . . . If a trial court finds that there is substantial evidence to support a zoning board's findings, it cannot substitute its judgment for that of the board. . . . If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Internal quotation marks omitted.) *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, 285 Conn. 381, 427, 941 A.2d 868 (2008).

"This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration. . . . The corollary to this rule is that absent substantial evidence in the record, a court may not affirm the decision of the board." (Citations omitted; internal quotation marks omitted.) *Martland*

v. *Zoning Commission,* 114 Conn. App. 655, 663, 971 A.2d 53 (2009).

Section 7.5.B of the Wallingford Zoning Regulations sets forth the criteria for evaluating applications for special permits. Most relevant to this appeal is § 7.5.B.1.a, which provides that the defendant should consider "[t]he size and *intensity of the proposed use* or uses and its or their effect on and compatibility with the adopted Plan of Development, the specific zone and the neighborhood . . . ." (Emphasis added.) Thus, the Wallingford Zoning Regulations explicitly list intensity of the proposed use as a factor for the defendant's consideration when deciding a special permit application. The defendant stated that intensification, e.g., an unacceptable increase in the intensity of the current use, was the basis for denying the special permit application. We conclude that the record contains substantial evidence supporting this specific reason, and, thus, the plaintiff's claim that the defendant provided only a general reason is without merit.

The plaintiff sought a special permit to operate a disposal cell at a closed landfill. Trucks would transport the materials from the plaintiff to the disposal cell located in Wallingford. The plaintiff planned to build a berm and to prepare the site for drainage prior to using the disposal cell. The plaintiff indicated that the cell would have a ten to fifteen year operating life with an 80,000 cubic yard capacity. Given this record, it was well within the discretion of the defendant to conclude that the plaintiff's proposal constituted an intensification of use. The site went from not being used at all to site preparation and construction and having trucks transport 4000 to 6000 cubic yards of fill on an annual basis. The defendant, in the exercise of its discretion, was free to use this consideration as a reason to deny the special permit application. See *Irwin* v. *Planning & Zoning Commission,* supra, 244 Conn. 627 (courts

never have held that zoning commission lacks discretion to determine whether general standards in regulations have been met); *Quality Sand & Gravel, Inc.* v. *Planning & Zoning Commission*, 55 Conn. App. 533, 537–38, 738 A.2d 1157 (1999) (same). On the basis of this record, we conclude that there was substantial evidence in the record to support the defendant's denial of the plaintiff's special permit application on the basis of an unacceptable increase in the intensity of the use of the landfill, in accordance with a specific criterion set forth in the Wallingford Zoning Regulations. Accordingly, the court properly dismissed the plaintiff's appeal.

The judgment is affirmed.

In this opinion the other judges concurred.