******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PARILLO FOOD GROUP, INC. *v.* BOARD
OF ZONING APPEALS OF THE
CITY OF NEW HAVEN
(AC 38023)

Alvord, Sheldon and Mullins, Js.

*Argued October 5—officially released December 6, 2016*

(Appeal from Superior Court, judicial district of New
Haven, Blue, J.)

*Proloy K. Das*, with whom were *Roderick R. Williams*, assistant corporation counsel, and, on the brief, *Sarah Gruber*, for the appellant (defendant).

*Brian F. Valko*, with whom was *Amy P. Blume*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, the Board of Zoning Appeals of the City of New Haven, appeals from the judgment of the trial court sustaining the appeal of the plaintiff, Parillo Food Group, Inc., from the defendant's decision granting the plaintiff's application for a special exception to operate a restaurant serving liquor that imposed a condition limiting its hours of operation. On appeal, the defendant claims that the court improperly concluded that it had no authority to limit the hours of operation of the plaintiff's restaurant.[1] Specifically, the defendant claims that the court (1) should have determined that municipal zoning boards have the authority to place temporal restrictions on special exception uses, (2) erroneously concluded that Connecticut's Liquor Control Act, General Statutes § 30-1 et seq., divests the defendant of its power to attach conditions limiting the hours of operation of restaurants that serve alcohol, and (3) erroneously concluded that the challenged condition was not integral to the defendant's approval of the special exception. We agree with the defendant's second claim and, accordingly, reverse the judgment of the trial court.[2]

The record reveals the following facts and procedural history. The plaintiff leases property on State Street in New Haven, on which it operates a restaurant. The property is situated in a BA zone, and the area surrounding the restaurant is used for both residential and commercial purposes. Three dwelling units are located above the restaurant, and there also is a separate two-family dwelling located on the subject property. The use of the property as a restaurant began in the 1990s.

In August, 2000, the defendant granted a special exception to Amato Bernardo that permitted the service of wine and beer in the then existing forty-two seat restaurant. In September, 2011, the plaintiff leased the restaurant portion of the property. In January, 2012, the restaurant was severely damaged by fire. The plaintiff expended approximately $15,000 to rebuild the restaurant, and, on January 25, 2013, it filed an application for a special exception to operate a forty-seven seat restaurant with a full restaurant liquor permit. Additionally, the plaintiff requested permission to allow three on-site parking places instead of the twelve spaces ordinarily required for a forty-seven seat restaurant.

The defendant held a public hearing on the plaintiff's application on March 12, 2013. Several individuals attended the hearing, some speaking in favor of the proposal and others speaking against it. Exhibits were submitted to the defendant, including an advisory report prepared by the New Haven City Plan Department (department) and an advisory report prepared by the New Haven City Plan Commission (commission). At a voting session held on April 9, 2013, the defendant's

board members discussed the plaintiff's application and the commission's suggestions in its report. The members voted unanimously to approve the special exception subject to the five conditions stated in that report. By letter dated April 12, 2013, the defendant notified the plaintiff of its decision. The plaintiff appealed to the Superior Court, challenging the authority of the defendant to impose the conditions.

The trial court held a hearing on November 13, 2014. The court heard testimony from Daniel Parillo, the president of the plaintiff corporation, and found that the plaintiff was aggrieved.[3] Following that determination, the parties' counsel presented their arguments to the court. They agreed that the pivotal issue before the court was whether the defendant had the authority to impose a limitation on the hours of the restaurant's operation as set forth in the first condition attached to the special exception. That condition provided: "Hours of operation not to extend past 11:30 p.m. daily. (Consistent with conditions attached to similar requests in this neighborhood.)" Although not expressly alleged in its administrative appeal or argued in its pretrial brief, plaintiff's counsel claimed at the hearing that the provisions of the Liquor Control Act governed the hours of operation for restaurants authorized to provide full liquor service.[4] According to the plaintiff, only a town, by vote of a town meeting or by ordinance; see General Statutes § 30-91 (b);[5] could limit those hours of operation. The trial court allowed both parties to submit supplemental briefs addressed to that particular issue.

The court issued its memorandum of decision on December 12, 2014. The court made the following determination: "Local authorities unquestionably have a general power to regulate health, safety, and welfare factors affecting establishments where liquor is sold. . . . Such regulation must, however, be done in a comprehensive, but not inconsistent, manner. . . . When local authorities seek to regulate the hours of operation of establishments selling alcoholic beverages . . . § 30-91 (b) tells them exactly how to do this. They must do so by vote of a town meeting or by ordinance." (Citations omitted; internal quotation marks omitted.) Citing *Bora* v. *Zoning Board of Appeals*, 161 Conn. 297, 302, 288 A.2d 89 (1971), and *Greenwich* v. *Liquor Control Commission*, 191 Conn. 528, 540, 469 A.2d 382 (1983), the court concluded that the defendant could not limit the hours of sale of alcohol under the guise of zoning. Accordingly, the court found the condition limiting the plaintiff's hours of operation to be illegal. After finding that the condition was not an integral component of the defendant's decision, the court modified that decision by removing that condition from the approval of the special exception. The defendant filed the present appeal after this court granted its petition for certification to appeal.

We first set forth the applicable legal principles and standard of review that guide our analysis. "In reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule,[6] according to which, [c]onclusions reached by [a zoning] commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [commission]. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [commission] supports the decision reached. . . . If a trial court finds that there is substantial evidence to support a zoning board's findings, it cannot substitute its judgment for that of the board. . . . If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Citations omitted; footnote added; internal quotation marks omitted.) *Municipal Funding, LLC* v. *Zoning Board of Appeals*, 270 Conn. 447, 453, 853 A.2d 511 (2004).

With respect to special exceptions, "General Statutes § 8-2 (a) provides in relevant part that local zoning regulations may provide that certain . . . uses of land are permitted only after obtaining a special permit or special exception . . . subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. . . . The terms special permit and special exception are interchangeable. . . . A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience and property values. . . . An application for a special permit seeks permission to vary the use of a particular piece of property from that for which it is zoned, without offending the uses permitted as of right in the particular zoning district. . . . When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity. . . . [Its] function . . . [is] to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. . . . We have observed that the nature of special [permits] is such that their precise location and mode of operation must be regulated because of the topography, traffic problems, neighboring uses, etc., of the site. . . . Review of a special permit application is inherently fact-specific,

requiring an examination of the particular circumstances of the precise site for which the special permit is sought and the characteristics of the specific neighborhood in which the proposed facility would be built." (Citations omitted; internal quotation marks omitted.) *Meriden* v. *Planning & Zoning Commission*, 146 Conn. App. 240, 244–45, 77 A.3d 859 (2013). When considering an application for a special permit, a zoning board is called upon to make a decision as to whether a particular proposal would be compatible with the particular zoning district "under the circumstances then existing." *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, 222 Conn. 607, 614, 610 A.2d 1205 (1992).

"The general conditions such as public health, safety and welfare, which are enumerated in zoning regulations, may be the basis for the denial of a special permit. . . . [B]efore the zoning commission can determine whether the specially permitted use is compatible with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns, such as parking or traffic congestion, would adversely impact the surrounding neighborhood. . . . Connecticut courts have never held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process. . . . If the special permit process were purely ministerial there would be no need to mandate a public hearing." (Internal quotation marks omitted.) *Children's School, Inc.* v. *Zoning Board of Appeals*, 66 Conn. App. 615, 619–20, 785 A.2d 607, cert. denied, 259 Conn. 903, 789 A.2d 990 (2001). Where a special exception is involved, "the board may impose conditions only to the extent allowed by the zoning regulations themselves. . . . Without such a grant of power, the board . . . would be unable to impose a condition even where one was obviously desirable." (Citations omitted.) *Shulman* v. *Zoning Board of Appeals*, 154 Conn. 426, 429, 226 A.2d 380 (1967).

It is undisputed that the plaintiff is entitled to operate a restaurant as a permitted use in the BA zone. In order to serve alcoholic liquor, however, the plaintiff was required to obtain a special exception pursuant to article V, § 42, of the New Haven Zoning Ordinance (regulations). Section 63 (d) of the regulations, pertaining to special exceptions, provides the following statement of purpose: "It is recognized . . . that there are certain uses and features which, because of their unique characteristics, cannot be distinctly classified or regulated in a particular district or districts, without consideration, in each case, of the impact of such uses and features upon neighboring uses and the surrounding area, compared with the public need for them at particular locations. Such uses and features are therefore treated as special exceptions." (Emphasis omitted.)

Section 63 (d) (3) of the regulations provides the defendant with the following guidelines in evaluating an application for a special exception: "Special exceptions shall be granted only where the [defendant] finds that the proposed use or feature or the proposed extension or substantial alteration of an existing use or feature is in accord with the public convenience and welfare after taking into account, where appropriate . . . (b) [t]he resulting traffic patterns and adequacy of proposed off-street parking and loading . . . (c) [t]he nature of the surrounding area and the extent to which the proposed use or feature might impair its present and future development . . . (d) [t]he proximity of dwellings, churches, schools, public buildings and other places of public gathering . . . (e) [a]ll standards contained in this ordinance . . . (f) [t]he comprehensive plan of the City of New Haven, and other expressions of the purpose and intent of this ordinance." (Emphasis omitted.) In addition to these general conditions, § 63 (d) (5) authorizes the defendant to impose specific conditions on a special exception when appropriate: "In granting a special exception, the [defendant] may attach such additional conditions and safeguards as are deemed necessary to protect the neighborhood, such as, but not limited to, those listed in paragraph 63 (c) (3) of this ordinance. Failure to comply with any such condition or safeguard shall constitute a violation of this ordinance." The conditions listed in § 63 (c) (3) include, inter alia, "[l]imitation of size, number of occupants, *method or time of operation*, or extent of facilities . . . ." (Emphasis added.)

The applicable zoning regulations clearly authorize the defendant to attach a condition limiting the hours of operation when granting a special exception. In reaching its decision that such a condition was warranted in the present case, the defendant had to rely on the record of the proceedings before it, which included the evidence presented at the public hearing and the advisory reports of the department and the commission.[7] At the public hearing, the defendant was apprised of the fact that the plaintiff had added a separate bar area to the restaurant with seven seats. The dining area accommodated forty seats, for a total of forty-seven seats. An opposition to the plaintiff's application, titled "[a]pproval of this special exception would intensify the present use and cause undue hardship to neighboring residents and businesses due to the lack of parking," that was signed by approximately forty-five people, was presented to the defendant. Additionally, concerns were expressed that the addition of the bar would change the nature of the restaurant's former use. Although only seven seats were in the bar area, one speaker at the hearing noted that many people would congregate in that area, standing behind the seats and ordering drinks. Further, individuals who identified themselves as living in the neighborhood for several

years stated that the parking situation was "awful" and a "nightmare," that there were many families with small children living in the area, that there would be "more bar action," and that the traffic would increase if the restaurant had a full liquor permit.

The advisory reports both recommended granting the special exception with conditions. The department's report contained the following statement: "The proposed change from beer and wine to full alcohol service (including a bar) does change the nature of the restaurant. Practically speaking, the question is whether or not it is apparent (or even just likely) that . . . this change . . . will result in an establishment that can operate 'in accordance with the public convenience and welfare' as was determined to be the case for the previous restaurant in 2000. In the view of staff, much of what could be viewed as additional impact is mitigable. For example, while it is unlikely that extending full liquor service to diners would in any way affect existing neighborhood conditions, the addition of a bar might. In many cases, bar service continues far past dining hours into early morning hours, occasionally disturbing nearby residents. Staff suggests that the imposition of hours of operation reflecting dining hours is not only appropriate but is reflective of recent policy in respect to restaurants located not only on State Street but also in other neighborhood business districts within the City." The department suggested adding a condition to the approval of the special exception that the "[h]ours of operation [are] not to extend past 11:30 p.m. daily."

The commission's report expressed similar concerns. In reviewing the criteria in the regulations pertaining to the granting of special exceptions, the commission noted: "The Plan's Housing and Neighborhood Planning section advises that neighborhoods be protected against potentially deleterious and/or nuisance influences. Any approval of this application should provide some assurances of that protection." The commission recommended that the application be approved with five conditions, including the following: "Hours of operation not to extend past 11:30 p.m. daily. (Consistent with conditions attached to similar requests in this neighborhood.)"[8] At the defendant's voting session on April 9, 2013, it followed the recommendation of the commission and approved the plaintiff's special exception with the five conditions listed in the commission's advisory report.

The plaintiff claims, however, that even if temporal conditions relating to a business' operation may be appropriate under certain circumstances, the defendant could not limit the plaintiff's hours of operation because the provisions of the Liquor Control Act grant only the city of New Haven, and not its zoning board, the authority to restrict the hours during which its restaurant can sell liquor. The plaintiff argues, and the trial

court agreed, that § 30-91 (a) sets forth the permissible hours of operation for a restaurant with a full liquor permit and that § 30-91 (b) allows a municipality to restrict those hours by vote of a town meeting or by ordinance. In other words, as argued, although a municipality has the authority to restrict the hours of sale, a zoning board has no such authority. We disagree.

The plaintiff maintains that the defendant erroneously construes the trial court's decision as holding that the preemption doctrine precludes the defendant from restricting the plaintiff's hours of operation. We conclude that the preemption doctrine does factor into our analysis because the trial court essentially has determined that a local zoning board is precluded, by virtue of § 30-91 (b), from restricting the hours of operation of a restaurant that possesses a full liquor permit. Even though the regulations expressly authorize the defendant to impose such a condition in granting a special exception, the court, in adopting the reasoning of the plaintiff, determined that zoning boards are preempted by the provisions of the Liquor Control Act from restricting the hours of service because only a municipality is expressly authorized to do so by § 30-91 (b). Accordingly, we look to the legal principles involved in the determination of when a local ordinance is preempted by a state statute.

"The authority to engage in zoning is drawn from the police power, which is the source of all zoning authority." (Internal quotation marks omitted.) *VIP of Berlin, LLC* v. *Berlin*, 50 Conn. Supp. 542, 549, 951 A.2d 714 (2007), aff'd, 287 Conn. 142, 946 A.2d 1246 (2008). "There is overlap in the General Statutes between the authority of a zoning commission and the exercise of the municipal police power through the adoption of ordinances by a town's legislative body. Many of the subjects over which the municipality is given the power to regulate by [General Statutes] § 7-148 are traditionally the subject of zoning and planning regulations as well. . . . Where the language and purpose of two statutes overlap, they are to be read in concert." (Citation omitted; internal quotation marks omitted.) Id., 551.

"The State may regulate any business or the use of any property in the interest of the public welfare or the public convenience, provided it is done reasonably. . . . The limit of the exercise of the police power is necessarily flexible, because it has to be considered in the light of the times and the prevailing conditions." (Internal quotation marks omitted.) *Modern Cigarette, Inc.* v. *Orange*, 256 Conn. 105, 118, 774 A.2d 969 (2001). "[I]n determining whether a local ordinance is preempted by a state statute, we must consider whether the legislature has demonstrated an intent to occupy the entire field of regulation on the matter or whether the local ordinance irreconcilably conflicts with the statute." Id., 119.

In the present case, when reviewing various provisions of the Liquor Control Act, it becomes apparent that the legislature intended municipalities and local zoning boards to have some input regarding, inter alia, the location of establishments that sell alcohol and conditions relating to the operation of those businesses. As already noted, § 30-91 (b) authorizes a town, by vote of a town meeting or by ordinance, to reduce the number of hours during which sales of alcoholic liquor are permissible. Further, a town may vote to prohibit the sale of alcoholic liquor within its boundaries. General Statutes § 30-9. Additionally, the Department of Consumer Protection must refuse to grant permits for the sale of alcoholic liquor in no-permit towns and where prohibited by the zoning ordinance of any city or town. General Statutes § 30-44.

We next examine the relevant statutes and the New Haven Zoning Ordinance to determine whether there is a conflict that precludes the defendant from imposing the hours of operation condition authorized by the local zoning regulation. "Whether an ordinance conflicts with a statute or statutes can only be determined by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives. . . . Therefore, [t]hat a matter is of concurrent state and local concern is no impediment to the exercise of authority by a municipality through the enactment of an ordinance, so long as there is no conflict with the state legislation. . . . Where the state legislature has delegated to local government the right to deal with a particular field of regulation, the fact that a statute also regulates the same subject in less than full fashion does not, ipso facto, deprive the local government of the power to act in a more comprehensive, but not inconsistent, manner." (Citations omitted; internal quotation marks omitted.) *Modern Cigarette, Inc.* v. *Orange*, supra, 256 Conn. 119.

"Therefore, merely because a local ordinance, enacted pursuant to the municipality's police power, provides higher standards than a statute on the same subject does not render it necessarily inconsistent with the state law. Whether a conflict exists depends on whether the ordinance permits or licenses that which the statute forbids, or prohibits that which the statute authorizes. If, however, both the statute and the ordinance are prohibitory[9] and the only difference is that the ordinance goes further in its prohibition than the statute, but not counter to the prohibition in the statute, and the ordinance does not attempt to authorize that which the legislature has forbidden, or forbid that which the legislature has expressly authorized, there is no conflict. . . . Where a municipal ordinance merely enlarges on the provisions of a statute by requiring more than a statute, there is no conflict unless the

legislature has limited the requirements for all cases." (Footnote added; internal quotation marks omitted.) Id., 120.

Our resolution of this appeal requires us to construe provisions of state statutes, i.e., provisions in the Liquor Control Act, and the local zoning regulations. "This analysis entails the construction of the relevant [zoning] regulations and [state] statutes, and is therefore a matter of law over which we exercise plenary review of the trial court's decision." *Zimnoch* v. *Planning & Zoning Commission*, 302 Conn. 535, 547, 29 A.3d 898 (2011).

The parties do not dispute that, under certain circumstances, a zoning board may impose conditions relating to a business' hours of operation in granting a special exception. Decisions regarding applications for special exceptions are particularly fact bound. A zoning board must consider "the particular circumstances of the precise site," including whether the "mode of operation must be regulated because of the topography, traffic problems [and] neighboring uses . . . of the site." (Internal quotation marks omitted.) *Meriden* v. *Planning & Zoning Commission*, supra, 146 Conn. App. 245. The defendant in this case concluded that a change from the plaintiff's service of beer and wine to full alcohol service, including a bar, would adversely affect the public convenience and welfare of the neighboring residential uses unless a condition limiting the hours of operation was imposed. This decision involves a particular use of a particular business in a particular zone.

As such, we conclude that the exercise of such authority pursuant to the regulations does not conflict with the purpose and intent of § 30-91 (b). The provisions of § 30-91 (b) permit a town to limit the hours of service in all types of businesses selling alcohol in all of the zoning districts in that town. It is a legislative decision, expressing a policy that service of alcohol should be restricted. Unlike a zoning board's administrative decision relating to an application for a special exception, a town, when it acts by vote of a town meeting or by ordinance pursuant to § 30-91 (b), has determined that everyone within its boundaries must limit the hours of sale because of a general determination that such a limitation is in the best interests of the town. The purposes for limiting the hours of operation in connection with a special exception and the purposes for restricting the hours of sale of liquor on a townwide basis are separate and distinct, and both the local zoning regulation and the state statute can coexist without conflict.

We conclude that the condition imposed by the defendant on the plaintiff's special exception, which limited the hours of operation with respect to the sale of alcoholic liquor, was authorized by a regulation that was not in conflict with the provisions of § 30-91 (b). The defendant's restriction of hours merely went further in

its prohibition on sales as set forth in § 30-91 (a). For the reasons stated in this opinion, the trial court improperly determined that the defendant was precluded from imposing the condition restricting the plaintiff's hours of operation and improperly determined that the condition at issue was illegal.[10]

The judgment is reversed and the case is remanded to the trial court with direction to dismiss the plaintiff's appeal.

In this opinion the other judges concurred.

[1] The defendant granted the special exception subject to five conditions, two of which were not challenged by the plaintiff and two of which the defendant conceded were advisory and not integral to the decision. The only condition at issue is the first condition: "Hours of operation not to extend past 11:30 p.m. daily. (Consistent with conditions attached to similar requests in this neighborhood.)"

[2] With respect to the defendant's first claim, the plaintiff does not challenge the authority of municipal zoning boards to impose temporal conditions, in certain situations, on special exception uses. Nevertheless, the defendant urges this court to "clarify that municipal zoning authorities may place reasonable hours of operation restrictions on local businesses when considering applications for special exceptions." Because this issue is not in controversy between the parties, we decline to address it. "This court does not render advisory opinions. . . . As our Supreme Court explained more than a century ago, [s]uch action on our part would be clearly extrajudicial. It would be a case purely of advice and not of judgment." (Citations omitted; internal quotation marks omitted.) *National Amusements, Inc.* v. *East Windsor*, 84 Conn. App. 473, 485, 854 A.2d 58 (2004).

We also do not address the defendant's third claim. Because we conclude that the defendant had the authority to impose the condition limiting the hours of operation, it is not necessary to determine whether that condition was integral to the defendant's approval of the special exception.

[3] The court's finding of aggrievement has not been challenged on appeal.

[4] General Statutes § 30-91 (a) provides in relevant part: "The sale or the dispensing or consumption or the presence in glasses or other receptacles suitable to permit the consumption of alcoholic liquor by an individual in places operating under . . . restaurant permits . . . shall be unlawful on: (1) Monday, Tuesday, Wednesday, Thursday and Friday between the hours of one o'clock a.m. and nine o'clock a.m.; (2) Saturday between the hours of two o'clock a.m. and nine o'clock a.m.; (3) Sunday between the hours of two o'clock a.m. and eleven o'clock a.m. . . ."

[5] General Statutes § 30-91 (b) provides in relevant part: "Any town may, by vote of a town meeting or by ordinance, reduce the number of hours during which sales under subsection (a) of this section, except sales pursuant to an airport restaurant permit, airport bar permit or airport airline club permit, shall be permissible. . . ."

[6] "This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration. . . . The corollary to this rule is that absent substantial evidence in the record, a court may not affirm the decision of the board." (Internal quotation marks omitted.) *Meriden* v. *Planning & Zoning Commission*, 146 Conn. App. 240, 247, 77 A.3d 859 (2013).

[7] The department's advisory report was submitted pursuant to § 63 (e) (2) of the regulations, and the commission's advisory report was submitted pursuant to § 63 (d) (6) of the regulations.

[8] The plaintiff challenges the defendant's statement that similar conditions relating to hours of operation have been imposed on similar establishments

in the area, noting that the restaurant across the street has a full liquor permit and has no restriction on its hours of operation. The competitor restaurant, however, secured its liquor permit twenty-eight years prior to the public hearing on the plaintiff's application. As previously noted, a zoning board must consider the circumstances "then existing" when it acts upon an application for a special exception. *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, supra, 222 Conn. 614. Neighborhood conditions may have changed substantially within those twenty-eight years.

[9] Section 30-91 (a), which provides that sales of alcoholic liquor shall be unlawful during certain hours, is a prohibitory statute. The condition imposed by the defendant on the plaintiff's special exception also is prohibitory in that it extends the hours during which the plaintiff's sale of alcoholic liquor would be prohibited.

[10] The trial court also relied on the cases of *Bora* v. *Zoning Board of Appeals*, supra, 161 Conn. 297, and *Greenwich* v. *Liquor Control Commission*, supra, 191 Conn. 528, in reaching its conclusion that the condition was illegal.

In *Bora*, a 1971 decision by our Supreme Court, the defendant zoning board of appeals granted the application for a variance from the off street parking regulations so that the applicant could operate a cafe without providing the requisite eight parking spaces. *Bora* v. *Zoning Board of Appeals*, supra, 161 Conn. 299. The board attached a condition to the variance that limited the hours of the applicant's operation of the cafe. Our Supreme Court determined that the zoning board exceeded its powers, as granted to it by the zoning ordinance, and concluded that the board had acted illegally. Id., 302. This was not a case involving a special exception, with the authority to impose a condition limiting the hours of operation as set forth in the zoning ordinance. The condition in *Bora* was attached to a *variance of parking space regulations*. The special exception in the present case was required in order for the plaintiff to sell alcoholic liquor.

In *Greenwich*, our Supreme Court determined that the plaintiff town had improperly refused to certify that an applicant's request for an issuance of a night club liquor permit from the Liquor Control Commission did not violate the town's zoning ordinance. *Greenwich* v. *Liquor Control Commission*, supra, 191 Conn. 539–40. The applicant's restaurant already had a valid restaurant liquor permit, and the applicant wanted to remain open one hour longer as permitted by a night club liquor permit. Id., 535–36. Our Supreme Court stated that the town had failed to point to any zoning laws that prohibited the applicant's certification for a night club liquor permit. Id., 539. Further, "[w]hat they did attempt, *without any basis in their zoning laws* and without having employed the legitimate legislative option of limiting the hours of sale afforded by § 30-91 (a), was to prohibit the issuance of this permit under the guise of zoning." (Emphasis added.) Id., 540. We do not find the holding of this case to be applicable to the present situation.

We also note that the Supreme Court case of *P. X. Restaurant, Inc.* v. *Windsor*, 189 Conn. 153, 454 A.2d 1258 (1983), contains language that is supportive of our decision. Our Supreme Court stated: "It is also reasonable . . . to imply that liquor premises are subject to local zoning ordinances which involve matters other than location. Once a liquor location is approved there may be additional health, safety and welfare factors unrelated to the fact that liquor will be sold at that location. These are zoning matters of local concern and thus are within the expertise of local authorities." Id., 160.